# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS VON BIALY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 16-42 |
| v. ) | Hon. Nora Barry Fischer |
| ) | |
| CHIPOTLE MEXICAN GRILL, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

This action involves allegations by Plaintiff Nicholas Von Bialy that Defendant Chipotle Mexican Grill ("Chipotle") terminated his employment on the basis of his partner's disability. In his Amended Complaint, Plaintiff asserts a claim against Chipotle for discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112. (Docket No. 13). Presently before the Court is Chipotle's Motion for Summary Judgment. (Docket No. 68). The matter has been fully briefed and oral argument, after which the parties filed supplemental briefing. (*See* Dockets Nos. 68-72, 76, 78-83, 92-93). Having considered the parties' positions and evaluated all of the evidence in light of the appropriate standard governing motions for summary judgment, for the following reasons, Chipotle's Motion for Summary Judgment will be GRANTED.

## II. FACTUAL BACKGROUND

A. Plaintiff's Employment Background

The following facts are not contested.[1] On or about October 28, 2013, Plaintiff began

---

[1] In many instances, Plaintiff states, "This fact is disputed as it is immaterial." (*See generally* Docket No. 83). Because Plaintiff provides no support for his assertion, and because Plaintiff fails to explain why certain facts are disputed as

1

working for Chipotle. (Docket No. 69 at ¶ 1; Docket No. 83 at ¶ 1). After training at other Chipotle restaurants, Plaintiff began working as the General Manager in June 2014 at the Chipotle restaurant located at 20024 Route 19, Cranberry Township, Pennsylvania 16066. (Docket No. 69 at ¶ 2; Docket No. 83 at ¶ 2).

Eric DiCenzo, a Chipotle Area Manager and Plaintiff's supervisor, oversaw Cranberry Township and submitted "The Area Manager Report, Plan for Building a Restaurateur Culture" (the "Restaurateur Plan") on December 15, 2014. (Docket No. 69 at ¶¶ 3-4; Docket No. 83 at ¶¶ 3-4). The Restauranteur Plan is a diagnosing planning tool that is used to evaluate issues occurring in Chipotle restaurants that prevent the restaurant's success. (Docket No. 69 at ¶ 5; Docket No. 83 at ¶ 5). The Restaurateur Plan cited twenty-six managerial deficiencies and issues with Cranberry Township and Plaintiff's performance. (Docket No. 69 at ¶ 6; Docket No. 83 at ¶ 6). Plaintiff's Restaurateur Plan was the second worst review in which Chipotle Team Director Rob Anderson had participated. (Docket No. 69 at ¶ 7; Docket No. 83 at ¶ 7). Area Manager Christopher Bruni considered the Restaurateur Plan to be "very bad" and Cranberry Township to be one of the most challenged stores for which he had reviewed a Restaurateur Plan. (Docket No. 69 at ¶ 8; Docket No. 83 at ¶ 8). Bruni's general take-away from the Restaurateur Plan was that Plaintiff was running Cranberry Township "very poorly" and that Plaintiff was not performing up to speed, and that Plaintiff was not doing what his supervisors needed him to do. (Docket No. 69

---

immaterial, the Court accepts same as true. *See* Practices and Procedures of Judge Nora Barry Fischer § II.E(ii), Sept. 19, 2017, *available at* http://www.pawd.uscourts.gov/Documents/Judge/fischer_pp.pdf ("In paragraphs corresponding to the statement of material facts not in dispute, the opposing party shall state whether the facts listed are disputed. For any disputed fact, the opposing party shall cite to evidentiary material demonstrating the dispute and attach such evidentiary material to its response."); *see also Rozier v. United Metal Fabricators, Inc.*, No. 09-CV-257, 2012 U.S. Dist. LEXIS 6200, at *7 (W.D. Pa. Jan. 19, 2012) ("Courts in this district have strictly adhered to the summary judgment procedures set forth both by the Federal and Local Rules, and have consequently deemed inadequately controverted facts as admitted for purpose of summary judgment.").

at ¶ 9; Docket No. 83 at ¶ 9).

B.  The Events of January 16-18, 2015

On January 16, 2015, Plaintiff and his partner, Jamie Pittner, attended a work function and awards ceremony at the Rivers Casino in Pittsburgh, Pennsylvania. (Docket No. 69 at ¶ 11; Docket No. 83 at ¶ 11). During same, Pittner collapsed, was rushed to Allegheny General Hospital, and was admitted to the emergency room and intensive care unit. (Docket No. 69 at ¶ 12; Docket No. 83 at ¶ 12). Upon her admission, Pittner had a blood alcohol level of .213. (Docket No. 69 at ¶ 15; Docket No. 83 at ¶ 15). While in the intensive care unit, Pittner was seen by Dr. Mark Lega, who diagnosed her as being intoxicated and discharged her from the intensive care unit on January 17, 2015. (Docket No. 69 at ¶¶ 13-14, 16; Docket No. 83 at ¶¶ 13-14, 16). At approximately 11:52 a.m., Pittner was discharged. (Docket No. 69 at ¶ 19; Docket No. 83 at ¶ 19).

On January 18, 2015, at approximately 5:12 p.m., Pittner admitted herself to the emergency room at the University of Pittsburgh Medical Center Passavant because she did not believe that she should have been discharged from Allegheny General Hospital. (Docket No. 69 at ¶ 20; Docket No. 83 at ¶ 20). Pittner was seen by Dr. Alan Shapiro, who discharged her on January 18, 2015, at approximately 7:31 p.m. (Docket No. 69 at ¶ 21, 24; Docket No. 83 at ¶ 21, 24).

C.  Chipotle's Knowledge and Notice of Pittner's Disability

On January 16, 2015, at 6:26 p.m., Plaintiff sent a text message to DiCenzo stating, "My wife just got rushed to the hospital." (Docket No. 69 at ¶ 25; Docket No. 83 at ¶ 25). Later that evening, Plaintiff spoke to DiCenzo on the telephone, the content of which he described during his deposition:

Q.  What did you discuss?
A.  Well, the fact that my wife had collapsed and that I would not be -- you

3

> > know, I would be taking care of this for a few days. I had the whole weekend off, so I wasn't missing any of my shifts.
> >  . . . .
> > Q. So you were informing him as a courtesy because it wasn't because you were going to be missing work; is that correct?
> > A. Yes.
> >  . . . .
> > Q. Pardon me. Do you remember exactly what you said to him?
> > A. No. I just said that my wife had collapsed and I'm at the hospital and just to let him know that if he needed me for anything, I probably wouldn't be available for 24 hours, if I can even recollect that. Like I said, I was an emotional wreck.
> > Q. Did you describe to him at all what happened to your wife, do you recall?
> > A. Just that she collapsed and that we took an ambulance to the hospital and that she's in the emergency room.
> > Q. Did you tell him what you thought it was, if anything?
> > A. I had no idea what it was.
> > Q. Other than that she had collapsed, did you make any other description of what had happened to her?
> > A. The fact that she collapsed and stopped breathing is all I can remember.
> > Q. Did you ever discuss what had happened to her in the hospital that she was being intubated?
> > A. Not to my knowledge, but maybe.
> > Q. Other than collapsed and wasn't breathing, were there any other descriptions of your wife's condition that you talked to Eric about that you recall?
> > A. No.

(Docket No. 69 at ¶ 26; Docket No. 83 at ¶ 26). The only communication between Plaintiff and DiCenzo on January 16, 2015, consisted of one telephone call and text messages. (Docket No. 69 at ¶ 29; Docket No. 83 at ¶ 29).

On January 17, 2015, at 10:10 a.m., Plaintiff sent a text message to DiCenzo stating:

Plaintiff: Morning Eric [sic] my wife is still in intensive care [sic] they don't know yet what's going on. They are going to be running tests all day. She is probably going to be here a couple of days or so [sic] I will be needing some time off to take care of all this and her.

Eric DiCenzo: Ok. Please make sure you log into workday and put the request in. It has to be initiated by you, [sic] I can't do it unfortunately. Thoughts and prayers are with you.

4

(Docket No. 69 at ¶ 27; Docket No. 83 at ¶ 27). On January 18, 2015, at 10:36 a.m., DiCenzo sent a text message to Plaintiff:

> [Eric DiCenzo:] Hey Nick. Just wanted to check in and see how your wife is doing? Rob and I would like to send something as well, what hospital is she in?
>
> [Plaintiff:] She is doing a little better got her out of AGH yesterday and brought back to the hotel for rest. They still don't know what's going on and weren't going to run anymore tests till Monday. We will be taking care of those tests outpatient this week to get to the bottom of this. Thank you for your wishes and support. It really means a lot.

(Docket No. 69 at ¶ 28; Docket No. 83 at ¶ 28).[2]

Plaintiff and DiCenzo had a meeting on January 23, 2015, at which time DiCenzo terminated Plaintiff. (Docket No. 69 at ¶¶ 10, 30; Docket No. 83 at ¶¶ 10, 30). Plaintiff described the meeting as follows:

> Q. When you had the discussion with Eric Dicenzo on January 23rd, did you discuss your wife in any way other than that you might need more time to take off?
> A. Well, he asked how my wife was doing and I said not well and that I would be needing more time off and then he terminated me.
> Q. Did you discuss any other specifics about her collapse?
> A. He didn't let me. He was very short and curt about it.
> Q. Did you discuss any other specifics about your wife's condition?
> A. No. Didn't have the opportunity to, he fired me.

(Docket No. 69 at ¶ 31; Docket No. 83 at ¶ 31). Plaintiff did not provide a medical note from a doctor about Pittner to Chipotle. (Docket No. 69 at ¶ 33; Docket No. 83 at ¶ 33). DiCenzo did not know anything about Pittner's medical condition, aside from what was in the text messages

---

[2] In its Concise Statement of Undisputed Material Facts, Chipotle incorrectly provides that Plaintiff initiated the text message, to which DiCenzo responded. (Docket No. 69 at ¶ 28). In response, Plaintiff states that "[Chipotle's] quotation does not support the stated fact." (Docket No. 83 at ¶ 28). While Plaintiff is correct, Chipotle's Exhibit 17 confirms that DiCenzo initiated the text message, to which Plaintiff responded. (Docket No. 71-17 at 2-3). Accordingly, the Court corrects Paragraph 28 of Chipotle's Concise Statement of Undisputed Material Facts to reflect that DiCenzo initiated the text message.

5

that Plaintiff sent to him in January 2015 and what was said during the telephone conversation with Plaintiff on January 16, 2015. (Docket No. 69 at ¶ 34; Docket No. 83 at ¶ 34).

      D.      Pittner's Diagnosis

Pittner's medical records first mention Postural Orthostatic Tachycardia Syndrome ("POTS") on or about February 25, 2015. (Docket No. 69 at ¶ 35; Docket No. 83 at ¶ 35). Pittner's first diagnosis of POTS occurred in the summer of 2015:

> Q. When was the first time you got an actual diagnosis of what happened to you on January 15, 2015?
> A. Cleveland Clinic.
> Q. I know you mentioned it before, but when did you say you started going to the Cleveland Clinic?
> A. Summer of 2015.
> Q. What was the diagnosis that the Cleveland Clinic ultimately gave you?
> A. POTS, which is Postural Orthostatic Tachycardia Syndrome, migraines.

(Docket No. 69 at ¶ 36; Docket No. 83 at ¶ 36).

      E.      Plaintiff's Post Termination Job Offer

Prior to his termination on January 23, 2015, Plaintiff was employed as a General Manager at Chipotle, with a base salary of $50,000.00. (Docket No. 69 at ¶ 37; Docket No. 83 at ¶ 37). Between February and March 2015, Plaintiff interviewed and was offered a leadership position at Primanti Brothers. (Docket No. 69 at ¶ 38; Docket No. 83 at ¶ 38). Primanti Brothers, which is an established restaurant company, offered Plaintiff a salary of $55,000.00 and benefits consisting of medical benefits, one week of sick leave, two weeks of paid vacation, and three weeks of paid vacation after two years. (Docket No. 69 at ¶¶ 39-41; Docket No. 83 at ¶¶ 39-41). In or about April 2015, Primanti Brothers contacted Plaintiff to inform him that its offer remained available. (Docket No. 69 at ¶ 43; Docket No. 83 at ¶ 43). Plaintiff did not accept Primanti Brothers' offer. (Docket No. 69 at ¶ 44; Docket No. 83 at ¶ 44).

6

## III. PROCEDURAL HISTORY

Chipotle filed a motion for summary judgment, a concise statement of material facts and supporting exhibits, and a brief in support of its motion. (Docket Nos. 68-72). Plaintiff responded with a brief in opposition to the motion for summary judgment and a response to Plaintiff's statement of material facts and supporting exhibits, and a statement of additional facts. (Docket Nos. 76, 78, 80-83). Chiptole replied. (Docket Nos. 84). Oral argument was held on November 17, 2017. Thereafter, Plaintiff filed supplemental briefing on December 21, 2017, to which Defendant responded on January 5, 2018. (Docket Nos. 92, 93). This matter is now ripe for disposition.

## IV. LEGAL STANDARD

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to

determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (citing *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). As to materiality, the relevant substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

## V. DISCUSSION

### A. Plaintiff's Claim of Association Discrimination

Plaintiff's claim is asserted pursuant to the association provision included in the Americans with Disabilities Act, 42 U.S.C. § 12112, which prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12112(8). The term "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(1)(A)-(C). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

8

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). An individual meets the requirement of "being regarded as having such an impairment," included in 12102(1)(C), "if the individual establishes that he or she has been subjected to an action prohibited under [the Americans with Disabilities Act] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

To establish a prima facie case of association discrimination, a plaintiff must prove the following:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
> (2) the plaintiff was subjected to adverse employment action;
> (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability;
> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Erdman v. Nationwide Ins. Co.*, 621 F. Supp. 2d 230, 234 (M.D. Pa. 2007) (quoting *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1085 (10th Cir. 1997); citing *Reddinger v. Hosp. Cent. Servs., Inc.*, 4 F. Supp. 2d 405, 409 (E.D. Pa. 1998)), *aff'd*, 582 F.3d 500 (3d Cir. 2009); *see also Clem v. Case Pork Roll Co.*, No. 15-CV-6809, 2016 U.S. Dist. LEXIS 93226, at *7-8 (D.N.J. July 18, 2016) (citing *Erdman*, 621 F. Supp. 2d at 234; *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016); *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011); *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230-31 (11th Cir. 1999); *Pollere v. USIG Pa., Inc.*, 136 F. Supp. 3d 680 (E.D. Pa. 2015)).

In the instant matter, the parties dispute whether Plaintiff's claim fails as a matter of law because he cannot establish the third prong, i.e., that Plaintiff was known by Chipotle at the time

9

of his termination to have a relative or an associate with a disability. As discussed above, the Americans with Disabilities Act, 42 U.S.C. § 12112, prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the *known disability* of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4) (emphasis added). The legislative history of 42 U.S.C. § 12112(b)(4) provides that "[t]his provision applies only when the employer knows of the association with the other person and knows of that other person's disability. The burden of proof is on the individual claiming discrimination to prove that the discrimination was motivated by that individual's relationship or association with a person with a disability." H.R. Rep. No. 101-485(III), at 38 (1990). In setting forth examples with respect to the applicability of 42 U.S.C. § 12112(b)(4), the legislative history provides:

> [I]t would be illegal for an employer to discriminate against a qualified employee because that employee had a family member or a friend who had a disability, if the employer knew about the relationship or association, knew that the friend or family member has a disability, and acted on that basis. Thus, if an employee had a spouse with a disability, and the employer took an adverse action against the employee based on the spouse's disability, this would then constitute discrimination.
>
> This section would not apply if the employer did not know of the relationship or association, or if the employer did not know of the disability of the other person. Thus, if an employer fired an employee, and did not know of a relationship or association of the employee with a person with a disability, the employee could not claim discrimination under this section.

*Id.* at 39.

Here, there is no genuine issue of material fact that Chipotle did not know of, and was not given notice of, Pittner's alleged disability. Indeed, it is undisputed that Pittner's medical records make no reference to POTS until on or about February 25, 2015, *over a month* after Plaintiff was terminated at Chipotle. (Docket No. 69 at ¶¶ 10, 30, 35; Docket No. 83 at ¶¶ 10, 30, 35). Pittner

10

was not diagnosed with POTS until the summer of 2015, or *at least five months* after Plaintiff was terminated at Chipotle.[3] (Docket No. 69 at ¶¶ 10, 30, 36; Docket No. 83 at ¶¶ 10, 30, 36). Accordingly, it is undisputed that Chipotle did not have actual knowledge of Pittner's disability when it terminated Plaintiff on January 23, 2015.[4]

It is similarly uncontested that Chipotle did not have notice of Pittner's alleged disability. As outlined above, Pittner collapsed at a Chipotle work function that was held at the Rivers Casino in Pittsburgh, Pennsylvania, on January 16, 2015. (Docket No. 69 at ¶¶ 11-12; Docket No. 83 at ¶¶ 11-12). That evening, Plaintiff sent a text message to DiCenzo stating, "My wife just got rushed to the hospital." (Docket No. 69 at ¶ 25; Docket No. 83 at ¶ 25). Plaintiff also spoke to DiCenzo on the telephone, at which time Plaintiff explained that Pittner had collapsed and stopped breathing, was taken to the hospital in an ambulance, and was in the emergency room. (Docket No. 69 at ¶ 26; Docket No. 83 at ¶ 26). The following day, Plaintiff sent a text message informing DiCenzo that Pittner was in intensive care, that tests would be run throughout the day, and that he would need to take time off work. (Docket No. 69 at ¶ 27; Docket No. 83 at ¶ 27). In response, DiCenzo advised Plaintiff to request time off through Chipotle's workday system. (Docket No. 69 at ¶ 27; Docket No. 83 at ¶ 27). When DiCenzo sent a text message to Plaintiff on January 18,

---

[3] The Court interprets "summer of 2015" to be, at the earliest, June 21, 2015.

[4] In his Amended Complaint, Plaintiff alleges that: (1) "Plaintiff's wife has a 'disability' as defined under the ADA, 42 U.S.C. § 12102;" (2) "Plaintiff's wife was diagnosed in January of 2015;" and (3) "Plaintiff informed the Defendant of his wife's disability on January 16, 2015." (Docket No. 13 at ¶¶ 16-18). Now, at this stage of the proceedings, Plaintiff has admitted that Pittner's medical records make no reference to POTS until on or about February 25, 2015, and that she was not diagnosed with POTS until the summer of 2015. (Docket No. 83 at ¶¶ 35-36). While the Court appreciates counsel's present admissions, counsel is required to conduct a pre-suit investigation prior to filing suit. *See* FED. R. CIV. P. 11(b)(3) (stating that an attorney must certify that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").

11

2015, Plaintiff stated that Pittner had been discharged from the hospital on January 17, 2015, and that tests would be run on Monday. (Docket No. 69 at ¶ 28; Docket No. 83 at ¶ 28).

When Plaintiff and DiCenzo met on January 23, 2015, Plaintiff told DiCenzo that Pittner was not going well and did not discuss any other specifics as to her condition. (Docket No. 69 at ¶ 31; Docket No. 83 at ¶ 31). Plaintiff did not provide a medical note from a doctor about Pittner to Chipotle. (Docket No. 69 at ¶ 33; Docket No. 83 at ¶ 33). Further, it is undisputed that DiCenzo did not know anything about Pittner's medical condition, aside from what was in the text messages that Plaintiff sent to him in January 2015 and what was said during the telephone conversation with Plaintiff on January 16, 2015. (Docket No. 69 at ¶ 34; Docket No. 83 at ¶ 34).

Plaintiff asserts that Chipotle "had knowledge of Ms. Pittner's disability" because "[o]n January 15, 2015, Defendant knew Ms. Pittner was found unresponsive and was unable to be awoken." (Docket No. 78 at 4-5). Plaintiff contends that, as a result, she "has established Defendant knew Ms. Pittner was disabled at the time of Plaintiff's termination." (*Id.* at 5). The record, however, unequivocally establishes that there is no genuine dispute of material fact that Plaintiff was not "known by his employer at the time to have a relative or associate with a disability." *Erdman*, 621 F. Supp. 2d at 234. At best, the record demonstrates that Chipotle knew that Pittner suffered some health problem on January 15, 2015. However, "simply informing an employer of a particular condition is not tantamount to providing the employer with knowledge that the employee is substantially limited in some major life activity." *Sever v. Henderson*, 381 F. Supp. 2d 405, 418 (M.D. Pa. 2005) (stating that "[v]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA'") (quoting *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996)).

12

The Third Circuit has recognized that "[t]here is a dearth of case law interpreting . . . the association provision, and Third Circuit case law on the subject is particularly limited." *Erdman v. Nationwide Ins. Co.*, 621 F. Supp. 2d 230, 235 (3d Cir. 2007); *see also Kennedy v. Chubb Group of Ins. Cos.*, 60 F. Supp. 2d 384, 396 (3d Cir. 1999) ("[T]here is a dearth of case law interpreting ADA's prohibition on discrimination based upon one's association with an individual with a disability."). Despite same, the Court's decision is supported by law within the Third Circuit. *See, e.g.*, *Shenk v. Pennsylvania*, No. 11-CV-1238, 2013 U.S. Dist. LEXIS 68490, at *45-49 (M.D. Pa. Mar. 11, 2013) (recommending that although there was a dispute of fact regarding whether the defendant had knowledge of the plaintiff's medical condition, the defendant was entitled to summary judgment because "there is no evidence to suggest that defendants granted employee leave requests for certain personal or family reasons but not for reasons related to the disability of an associate"), *Shenk v. Pennsylvania*, No. 11-CV-1238, 2013 U.S. Dist. LEXIS 67495, at *27-28 (M.D. Pa. May 13, 2013) (adopting the recommendation as to the plaintiff's association discrimination claim). *Cf. Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 511 (3d Cir. 2009) (affirming the district court's grant of summary judgment because the record was devoid of evidence that the defendant's decision to fire the plaintiff was motivated by his daughter's disability, as the defendant was aware of same for many years before the plaintiff was fired).

The Court's decision is further supported by law interpreting the association provision outside this jurisdiction. For example, in a case factually similar to the instant matter, United States Magistrate Judge L. Patrick Auld recommended that summary judgment be granted to the defendant because the plaintiff "submitted no evidence that, at the time of her transfer, her husband *even* had 'a medical diagnosis of an impairment' (or that he had a 'record' of such a diagnosis or

13

that Defendant 'regarded' him as having such a diagnosis), much less proof of a disability *in addition to* such a medical diagnosis." *Smith v. Bank of Stanly*, No. 09-CV-951, 2011 U.S. Dist. LEXIS 14538, at *94-96 (M.D.N.C. Feb. 11, 2011) (emphasis in original), *recommendation adopted*, slip op. (M.D.N.C. Mar. 31, 2011). Likewise, in *Wesley v. Stanley Door Systems, Inc.*, 986 F. Supp. 433 (E.D. Mich. 1997), the defendant asserted that the plaintiff could not establish a prima facie case of discrimination because it had no knowledge of the plaintiff's wife's disability. 986 F. Supp. at 436. The District Court granted summary judgment to the defendant, finding that the plaintiff failed to produce sufficient evidence that the defendant was aware of the disability to establish a genuine issue of fact for trial and produced no evidence establishing that there was a causal connection even if the defendant had known. *Id.*

Given the "dearth" of case law interpreting the association provision, *Erdman*, 621 F. Supp. 2d at 235; *Kennedy*, 60 F. Supp. 2d at 396, the Court has examined cases wherein employers were unaware of the plaintiffs' disabilities. Such case law also supports the Court's decision to grant Chipotle's motion for summary judgment. Indeed, the Third Circuit has held that a plaintiff's discrimination claim failed where an employer "knew that he had some sort of respiratory disorder prior to his termination" but "did not know about his disability." *Rinehimer v. Cemcolift*, 292 F.3d 375, 380-81 (3d Cir. 2002). Similarly, "merely showing that an employer knows of an alleged handicap" is insufficient. *Mihalko v. Potter*, No. 00-CV-2076, 2003 U.S. Dist. LEXIS 24825, at *39 (W.D. Pa. Dec. 12, 2003) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) ("[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled.")). Rather, "'it is essential that [he] demonstrate, not only that her employer perceived her as having an impairment, but also that the

14

employer regarded that impairment as *imposing a substantial limitation on a major life activity*.'" *Id.* at *39-40 (quoting *Kotas v. Eastman Kodak Co.*, No. 95-CV-1634, 1997 U.S. Dist. LEXIS 13839, at *33 (E.D. Pa. Sept. 3, 1997) (emphasis in original)). *See also Collins v. Prudential Inv. & Ret. Servs.*, 119 Fed. Appx. 371, 380 (3d Cir. 2005) (affirming the district court's grant of summary judgment and explaining that the defendant's argument that it "did not even know [the plaintiff] may be disabled until she was diagnosed with ADHD/ADD, and that was not until *after* she was fired" had "considerable force") (emphasis in original); *Ruggiero v. Mount Nittany Med. Ctr.*, No. 16-CV-1996, 2017 U.S. Dist. LEXIS 73546, at *17 (M.D. Pa. May 15, 2017) (granting motion to dismiss because "[i]t is not clear when, or if, [the defendant] was aware that [the plaintiff] had limitations based on [her] alleged disabilities").[5]

The record unequivocally demonstrates that there is no genuine issue of material fact that Chipotle did not have knowledge of Pittner's alleged disability at the time Plaintiff was terminated. Thus, Plaintiff has failed to establish a prima facie case of association discrimination under 42 U.S.C. § 12112(b)(4). Accordingly, Chipotle is entitled to judgment as a matter of law.

### B. Plaintiff's Failure to Mitigate Damages

In the alternative, Chipotle argues that it is entitled to partial summary judgment for Plaintiff's failure to mitigate his damages. The parties addressed the issue in their initial briefing and at argument. (Docket Nos. 70 at 21-24; 78 at 9-10; 84 at 6; 91 at 26-29). In his supplemental briefing, Plaintiff addresses only the issue of whether he failed to mitigate his damages. (Docket

---

[5] The only authority upon which Plaintiff relies is *Tice v. Centre Area Transportation Authority*, 247 F.3d 506 (3d Cir. 2001). (Docket No. 78 at 4). Plaintiff cites to *Tice* for the proposition that the inquiry as to a disability is to be made on a case-by-case basis. (*Id.*). Because Tice did not relate to a disability under 42 U.S.C. § 12112(b)(4), it is inapposite to the instant matter.

No. 92 at 1-9). As Chipotle argues in its opposition to Plaintiff's supplemental brief, (Docket No. 93), the Court need not address Plaintiff's arguments because, for the reasons outlined above, Chipotle is entitled to summary judgment as a matter of law given Plaintiff's failure to establish a prima facie case of association discrimination under 42 U.S.C. § 12112(b)(4). The Court agrees. Hence, the question of damages is moot. *See, e.g.*, *Rymas v. Princeton Healthcare Sys. Holding, Inc.*, No. 15-CV-8188, 2017 U.S. Dist. LEXIS 178103, at *35 (D.N.J. Oct. 27, 2017) (declining to address whether the plaintiff had failed to mitigate her damages after granting the defendant's motion for summary judgment); *see also Cole v. Del. Tech. & Cmty. College*, 459 F. Supp. 2d 296, 310 n.13 (D. Del. 2006) (noting that the issue of mitigation was moot because the defendant's motion for summary judgment was granted with respect to the plaintiff's claim for constructive discharge).

## VI. CONCLUSION

Based on the foregoing, Chipotle's Motion for Summary Judgment, (Docket No. 68), is GRANTED. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record.